UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| CHAOBO ZHANG,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br><br>Respondents. | Case No. 5:26-cv-04463-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On August 7, 2026, petitioner Chaobo Zhang ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (Docket No. 1).

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates his right to due process under the Fifth Amendment; and (2) Petitioner's detention violates 8 U.S.C. § 1226(a). (Petition at 6-10).[1]

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

On August 17, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), accompanied by an exhibit (Docket No. 8-1). In the Answer, Respondents allege, *inter alia*, that Petitioner appears to be eligible for a bond hearing pursuant to the recent Ninth Circuit ruling in Rodriguez Vasquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). (Docket No. 8 at 2).

On August 20, 2026, Petitioner filed a Reply. (Docket No. 9).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of the Peoples Republic of China. (Petition at ¶¶ 1 and 7). On or about September 1, 2024, Petitioner entered the United States without inspection and was apprehended by Immigration and Customs Enforcement ("ICE"). (Id. at ¶ 19). On or around September 3, 2024, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear, charging Petitioner with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(1) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an immigration judge. (Id. at ¶ 20). On or about September 3, 2024, ICE released Petitioner from custody on his own recognizance pursuant to INA § 236. (Id. at ¶ 21).[3]

/ / /

---

[2] The Background is based primarily on the allegations in the Petition.

[3] Petitioner's Form I-213 (Record of Deportable/Inadmissible Alien), attached to the Answer, states that on September 1, 2024, Petitioner was encountered by U.S. Border Patrol agents and was released the same day on an Order of Release on Recognizance, Form I-220A. (Docket No. 8-1 at 3). For purposes of the Court's analysis, as set forth below, the factual discrepancy is immaterial.

Following his release, on an unspecified date, Petitioner was included as a derivative applicant on his spouse's application for asylum. (Id. at ¶ 22). That application remains pending before the Immigration Court. (Id.).

Since his release, Petitioner made good-faith efforts to comply with all reporting requirements imposed by ICE. (Id. at ¶ 23). Petitioner worked to support himself and lived openly and peacefully in the community. (Id.).

On or about October 24, 2025, Petitioner was arrested in connection with allegations of domestic violence. (Id. at ¶ 24). On November 4, 2025, Petitioner entered pleas of nolo contendere to misdemeanor violations of California Penal Code sections 417(a)(1) and 243(e)(1). (Id. at ¶ 25).

After being released from criminal custody on or about November 4, 2025, Petitioner complied with the criminal court's orders until ICE re-detained him on June 17, 2026. (Id. at ¶¶ 24-25). On or about June 17, 2026, Petitioner was detained in Los Angeles by ICE, and Petitioner has remained detained since that date. (Id. at ¶ 26). When Petitioner was arrested, he was not presented with any warrant authorizing his detention. (Id. at ¶ 27). When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including his Exit-Entry Permit for Travelling to and from Hong Kong and Macao and his driver's license. (Id. at ¶ 28). At no time prior to his re-detention was Petitioner notified that his release had been revoked or that he would be re-detained. (Id. at ¶ 29). Petitioner was not afforded advance notice of Respondents' intention to revoke his release and re-detain him, and was not provided an opportunity to contest his re-detention before being taken into custody. (Id.). As of August 7, 2026, Respondents have not provided Petitioner with a bond hearing. (Id. at ¶ 30).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Id. at ¶ 1; see https://locator.ice.gov/odls/#/results).

/ / /

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised, *inter alia*, a claim under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due

process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. <u>Petitioner's First Claim Warrants Habeas Relief.</u>

Petitioner contends that his arrest and re-detention on June 17, 2026 violated his right to due process under the Fifth Amendment. (Petition at 6-9).

Petitioner alleges that on or about September 1, 2024, he entered the United States without inspection and was apprehended by ICE. On September 3, 2024, DHS issued Petitioner a Notice to Appear, charging Petitioner with removability under the INA § 212(a)(6)(A)(1) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an Immigration Judge. On September 3, 2024, Petitioner was released from custody on his own recognizance. Since then, Petitioner has resided in the United States and has been included as a derivative applicant on his spouse's application for asylum, which is pending. Since his release, Petitioner has made good-faith efforts to comply with all reporting requirements imposed by ICE, has worked to support himself and has lived openly and peacefully in the community. On or about October 24, 2025, Petitioner was arrested by local authorities in connection with allegations of domestic violence; however, on November 4, 2025, he entered a plea of nolo contendere to misdemeanor violations of California Penal Code sections 417(a)(1) and 243(e)(1). After being released from criminal custody, Petitioner complied with the state court's orders until ICE re-detained him on June 17, 2026. When Petitioner was arrested by ICE, he was not presented with any warrant authorizing his detention, was not notified that his release had been revoked or that he would be re-detained, was not afforded advance any notice, and was not provided an opportunity to contest his re-detention before being taken into custody. While Respondents argue that Petitioner's arrest and re-detention was the result of "a material change of circumstances," specifically Petitioner's misdemeanor arrest and conviction

(Answer at 2), they do not otherwise contradict Petitioner's allegations regarding the circumstances of his arrest and re-detention, particularly with respect to the absence of due process protections.

In light of these facts, the Court considers the Mathews factors.

a. Private Interest

The parties do not dispute that Petitioner was encountered and detained by immigration authorities after he entered the country without inspection on September 1, 2024. (Petition at ¶ 19; see Docket 8-1 at 3). Likewise, the parties also do not dispute that Petitioner was subsequently released on an Order of Release on Recognizance. (Petition at ¶ 21; see Docket No. 8-1 at 3). Following his release, Petitioner established a life in the community, has worked to support himself, and has been included as a derivative applicant of his spouse's application for asylum.

Accordingly, the Court finds that Petitioner developed a substantial liberty interest in remaining out of custody following his release on recognizance in September 2024. See e.g., Tinoco v. Noem, 818 F. Supp. 3d 1141, 1152 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that the petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a

relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); López, 2025 WL 2959319, at *6 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom."); Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

b. Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when they released him on his own recognizance in September 2024; otherwise, the government would not have done so. Cf. e.g., Padilla v. Bowen, Case No. 2:25-cv-10780-CAS-SK, 2025 WL 3251368, at *7 (C.D. Cal. Nov. 21, 2025); Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). In light of this record, without a pre-deprivation hearing, there exists a significant risk of erroneous deprivation of Petitioner's liberty interest. See Fernandez v. Semaia, Case No. 5:25-cv-03412-SPG-MBK, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) ("[T]he risk of erroneous deprivation is high because [the petitioner] has been afforded no

process and there is no evidence of any changed circumstances that would justify his re-detention.").

c. Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, Respondents have not made a compelling argument as to why Petitioner should be detained without a pre-detention hearing. Respondents did not deem Petitioner to pose either a risk of flight or a danger when they released him in September 2024. Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted).

Therefore, there is a great risk that the lack of a pre-detention process has resulted in Petitioner's unnecessary detention. See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); López, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained.").

Accordingly, the Court concludes that the government's June 17, 2026 re-detention of Petitioner, who has developed a significant liberty interest during his more than two years in the United States, without first providing him with notice and opportunity for a hearing before a neutral adjudicator, violated his right to procedural due process under the Fifth Amendment.

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Chaobo Zhang (A# 226-131-823) from custody, subject to the same conditions (if any) that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: September 9, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE